# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ENTERPRISE BANK & TRUST, | )<br>)<br>) |
| Plaintiff, | )<br>) 2:12-cv-1618 |
| v. | )<br>)<br>) |
| JEFFREY LIPTON and SHELLEY LIPTON, | )<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the MOTION TO DISMISS FOR FAILURE TO JOIN A REQUIRED PARTY UNDER RULE 19(A) (Doc. No. 3), filed by Defendants Jeffrey Lipton and Shelley Lipton, with brief in support (Doc. No. 4). Plaintiff, Enterprise Bank & Trust, filed a brief in opposition (Doc. No. 9); Defendants filed a reply brief (Doc. No. 10); and Plaintiff filed a surreply brief (Doc. 12) after it obtained leave of Court.

## Background

On June 30, 2009, Defendants entered into a Loan Agreement with the First National Bank of Olathe, Scottsdale, AZ ("FNBO") in order to refinance and partially satisfy their guarantor obligations for a real estate loan. *See* Pl.'s Compl. at 16-44, Ex. A, ECF No. 1-2. As part of the loan, Defendants delivered a Promissory Note in the principal sum of $7,150,000 and executed a Security Agreement that lists the collateral pledged. *See* Pl.'s Compl. at 48-62, Exs. B & C, ECF No. 1-2. Plaintiff Enterprise Bank & Trust ultimately became the owner and holder of all rights relative to those Agreements after the Office of the Controller of the Currency closed FNBO and appointed the Federal Deposit Insurance Corporation as Receiver which sold the loan at issue to the current successor in interest.

To secure payment of the borrowed principal and performance of all other obligations, the Loan Agreement required Defendants to provide FNBO with, *inter alia*, a first lien against their 2009 Tax Refund and a first lien against certain stocks as described more fully in the Security Agreement. Schedule 1 to the Security Agreements lists the collateral as: (1) "Debtor's State or Federal Income Tax refund for the year 2009, if any, not to exceed the sum of $2,500,000"; and (2) "[a]ll stock, shares, options, warrants, convertible notes, convertible debt and other present or contingent ownership rights and interests, including without limitation all interests referenced in the e-mail attached as Schedule 1(a) in InEnTec, LLC, a New York limited liability company, or its successors, subsidiaries, or affiliates." Pl.'s Compl. at 59, Ex. C, ECF No. 1-2. At the time the parties executed the Agreements, Schedule 1(a) indicated that Defendants held 1,149,726 shares of InEnTec, LLC stock in which FNBO perfected its security interest on July 17, 2009 when it filed a UCC-1 Financing Statement and took physical possession of the certificate. *See* Pl.'s Compl. at 70, Ex. E, ECF No. 1-2.

The Loan Agreement states the right of FNBO to enforce its lien upon the stock. More specifically, Paragraph 1.13 provides as follows:

> 1.13 Lender's Right to Stock.
>
> Notwithstanding any other provision of this Agreement or the Security Agreement, Lender shall not seek to enforce its lien upon the Stock unless:
>
> a. The Refund Payment is not received by Lender within one (1) calendar year from the date of this Agreement [June 30, 2009], or
>
> b. The sum of the following are less than the outstanding balance of the Note:
>
> > (i) the product of the Appraised Value of the 18 Cactus Real Property multiplied by 65%, less the outstanding balance of the existing note held by the Lender and secured by a first priority deed of trust lien against the Peoria 50 Real Property, plus

> (ii) the product of the Appraised Value of the Peoria 50 Real Property multiplied by 70%, less the outstanding balance of the Real Estate Loan secured by a first priority deed of trust lien against the Peoria 50 Real Property.

Pl.'s Compl. at 22, Ex. A, ECF No. 1-2. Approximately one week before the expiration of the one-year deadline, Defendants and FNBO executed an Amendment to the Loan Agreement to modify the payment terms. *See* Pl.'s Compl. at 62-69, Ex. D, ECF No. 1-2. The stated consideration for the June 25, 2010 Amendment was Defendants' agreement to make two payments of $1,250,000 (the "Curtailment Payments") in order to reduce the outstanding principal balance; the specified security for the Promissory Note continued to be the two encumbrances listed in Schedule 1.[1] All other provisions from the original loan documents also remained unchanged and in full force and effect.

Roughly a year after the Amendment, Defendants filed a Chapter 7 Voluntary Petition on July 8, 2011 in the United States Bankruptcy Court for the Western District of Pennsylvania at Docket Number 2:11-24336-CMB. Defendants later filed a Summary of Schedules in connection with the bankruptcy proceeding, outlining their assets and liabilities. Schedule D, "Creditors Holding Secured Claims," listed both FNBO and PNC Bank, National Association as lienholders of Defendants' interest in the InEnTec, LLC stock with the debt listed as undisputed. *See* Pl.'s Compl. at 82-83, Ex. F, ECF No. 1-2. The Statement of Intentions filed with the Petition describes that the Defendants will surrender their interest in all stocks, shares, options, and warrants in InEnTec, LLC to FNBO, but the lien held by PNC is not mentioned in that document.

---

1. As discussed in greater detail below, there is a significant dispute over whether the Defendants ever made the Refund Payment. While Defendants provide documentation to support the conclusion that they made the two Curtailment Payments on June 2, 2010 and June 29, 2010 and claim that the $2,500,000 came from their Tax Refund, Plaintiff views that payment as consideration for the Amendment rather than a satisfaction of their Tax Refund obligation.

3

Defendants ultimately received a discharge of their personal obligation in the Bankruptcy Court on November 5, 2011. On February 9, 2012, the Chapter 7 Trustee filed her Notice of Intent to Abandon in which the InEnTec LLC asset was listed among the personal property she found burdensome and of inconsequential value to the estate as it was subject to a lien. Without objection, the Chapter 7 Trustee abandoned the property on February 24, 2012.

At some point during the Bankruptcy proceedings, InEnTec converted from an LLC to a Delaware corporation. Defendants have allegedly represented to Enterprise Bank that they have received no information regarding the redemption of the LLC Stock Certificate for stock in InEnTec as a corporation. Nevertheless, Enterprise Bank as successor in interest to FNBO, has filed a UCC-3 Financing Statement Amendment with the Commonwealth of Pennsylvania to cover the stock of InEnTec, LLC or its successors, subsidiaries, or affiliates.

Enterprise Bank initiated this action by the filing of a two-count Complaint in the Court of Common Pleas of Allegheny County on October 3, 2012 in which it claims the Defendants refuse to tender payments due under the Agreements such that their inaction constitutes a material default. Accordingly, Plaintiff seeks to exercise its right under the Agreements and enforce its lien on the Stock by requesting that this Court order specific performance and grant injunctive relief.

Defendants removed the matter to this Court on November 5, 2012 based on diversity jurisdiction to which Plaintiff did not object.[2] *C.f.* Fed. R. Civ. P. 1441. Almost immediately

---

2. Enterprise Bank & Trust is a Missouri chartered trust company with a corporate address in Missouri and a principal place of business in Arizona. The Complaint notes that both Defendants reside in Allegheny County, Pennsylvania. However, the Court notes that Schedule A of the Bankruptcy Petition describes a property located in Arizona. *See* Pl.'s Compl. at 74, Ex. F, ECF No. 1-2. Aside from Plaintiff's unadorned and unsubstantiated comment that joinder would destroy diversity, there is no record evidence that indicates Defendants maintained domicile in Arizona.

4

thereafter, Defendants filed the pending motion on November 12, 2012 in which it requests that the Court join PNC as a required party under Rule 19(a). The motion is ripe for disposition.

## Standard of Review

A party may move to dismiss a case for failure to join a party under Rule 19. *See* Fed. R. Civ. P. 12(b)(7). In reviewing a Rule 12(b)(7) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 618 (W.D. Pa. 2009). A court making a Rule 19 determination may consider evidence outside the pleadings. *Id.* The moving party bears the burden of showing that a nonparty is both necessary and indispensable.[3] *Id.* In a diversity case the issue of whether a party is necessary or indispensable is a question of federal law but determined by reference to interests of the parties under state law. *Huber v. Taylor*, 532 F.3d 237, 247 (3d Cir. 2008) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124 n. 22 (1968)).

## Discussion

Defendants request that the Court join PNC as a required party under Rule 19(a). Generally speaking, Defendants argue that the Curtailment Payments relinquished the enforceability of FNBO's security interest in the stock, and therefore, PNC holds either the first-priority security interest in the stock pursuant to its Pledge Agreement or a directly competing interest. Thus, as Defendants reason, any disposition of this action in PNC's absence may impair

---

3. The Court recognizes that the Federal Rules of Civil Procedure no longer ask whether a party is "necessary" in the Rule 19 analysis nor include the term "indispensable" after the 2007 "restyling" amendments to the Rules. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 855 (2008) (noting the changes to Rule 19). However, the Advisory Committee's Notes make clear that the Amendment, including the change from "necessary" to "required" and the omission of "indispensable," were "intended to be stylistic only." *See* Fed. R. Civ. P. 19, advisory committee's notes to 2007 amendment.

their ability to protects its interest and/or leave them with a substantial risk of incurring multiple or inconsistent obligations due to the competing interests.

Plaintiff objects to nearly every one of the theories offered by Defendants, and it presents three seemingly meritorious arguments among the many positions outlined in the briefs it submitted. First, Plaintiff relies heavily on its appended material (*i.e.*, both the UCC Filing Statements and UCC Filing Chain of Enterprise Bank and PNC Bank) to demonstrate that Enterprise Bank, as opposed to PNC Bank, is the senior lienholder by virtue of recording and perfecting its lien first. Second, relying on the Bankruptcy Schedules and Statement of Intentions, Plaintiff highlights its position that Defendants cannot now argue that they satisfied the lien prior to their bankruptcy when the schedules (a) listed FNBO, the predecessor in interest to Enterprise Bank, as a secured creditor with a valid lien; and (b) indicated that Defendants would surrender the stock. Third, Plaintiff disputes that the failure to join PNC will neither impede the latter's rights nor open Defendants to duplicative liability, as Article 9 of the UCC sufficiently protects the rights of PNC to redeem the collateral and the Chapter 7 discharge sufficiently protects Defendants. The Court agrees.

Consideration of a motion to dismiss for failure to join a required party brought under Rule 12(b)(7) naturally begins with Rule 19. *Pittsburgh Logistics Sys., Inc.*, 669 F. Supp. 2d at 616-17. Rule 19 addresses distinct but related questions concerning compulsory joinder, and its structure generally requires a two-step analysis. *Tullett Prebon PLC v. BGC Partners, Inc.*, 427 F. App'x 236, 239 (3d Cir. 2011) (*Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007)).

Rule 19(a) first sets forth the standard employed to determine whether it is necessary that a court join an absent party to the action when feasible. *Huber*, 532 F.3d at 248. To make that

6

determination, a court must consider whether a person or entity not presently a litigant in the action is a "required party." *Pittsburgh Logistics Sys., Inc.*, 669 F. Supp. 2d at 617. "Required parties" are those "subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" and who satisfy one of two subsections of Rule 19(a). *Id.* (quoting Fed. R. Civ. P. 19(a)(1)); *see Altman v. Liberty Helicopters*, CIV.A10-545, 2010 WL 2998467 (E.D. Pa. July 29, 2010) ("'Clauses (1) and (2) of Rule 19(a) are phrased in the disjunctive and should be so treated.'") (quoting *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993)). Rule 19(a)(1)(A) asks whether "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). "At this step, the court limits its inquiry to whether it can 'grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial.'" *Pittsburgh Logistics Sys., Inc.*, 669 F. Supp. 2d at 617 (quoting *Gen. Refractories*, 500 F.3d at 313) (emphasis in original) (citing *Huber*, 532 F.3d at 248). Alternatively, Rule 19(a)(1)(B) outlines that the court should contemplate whether "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). Here, "the court must consider the effect, if any, that resolution of the dispute among the named parties will have on an absent party." *Huber*, 532 F.3d at 248.

Rule 19(b) then sets forth whether the court should allow the litigation to proceed when the joinder of an otherwise required party is not feasible because it would destroy subject matter jurisdiction or violate venue principles, a question that the court need not reach if the absent

7

party is not necessary under Rule 19(a). Fed. R. Civ. P. 19(b); *see Culinary Serv. of Delaware Valley, Inc. v. Borough of Yardley, Pa*, 385 F. App'x 135, 145 (3d Cir. 2010) ("A holding that joinder is compulsory under Rule 19(a) is a necessary predicate to the district court's discretionary determination under Rule 19(b).") (citing *Gen. Refractories Co.,* 500 F.3d at 307). Put differently, "if joinder of a necessary absent party is not feasible, the court must then determine whether the absent party is 'indispensable,' applying the four factors set out in Fed. R. Civ. P. 19(b)." *Pittsburgh Logistics Sys., Inc.*, 669 F. Supp. 2d at 617. If the court deems the absent party indispensable, the litigation cannot proceed. *Janney Montgomery Scott*, 11 F.3d at 404.

Here, the Court finds that PNC Bank is not a required party to this action under Rule 19(a) even though joinder is feasible. The Court certainly recognizes that PNC Bank is subject to service of process and that its addition to this case as an involuntary defendant would not destroy subject-matter jurisdiction. PNC Bank, with a principal place of business in Pennsylvania, is a citizen of the Commonwealth for purposes of diversity and is subject to service of process; its joinder would not disturb the well-settled rule that complete diversity in multiparty cases requires that no plaintiff be a citizen of the same state as any defendant. *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). Despite the feasibility of joinder, however, Defendants have not met their burden in showing that PNC Bank qualifies as a required party under the disjunctive clauses of Rule 19(a).

Although not advanced by Defendants, the Court first highlights that Rule 19(a)(1)(A) is not implicated. The absence of PNC Bank from this matter simply does not affect the ability of the Court to accord complete relief among the existing parties. This case is based solely on an alleged breach of contract between the parties presently named. Enterprise Bank is not asking

the Court to decide that it holds the senior lien, but rather, only to decide if Defendants are in violation of the Loan Agreement, as amended. If Plaintiff is able to establish a breach, this Court may certainly order specific performance and enter injunctive relief with regard to the collateral at issue irrespective of what effect that may have on PNC Bank. Thus, a decision on whether Plaintiff is entitled to possession of the stock is independent from the priority of the respective security interests.

Turning to the second clause, where Defendants direct their focus, an application of Rule 19(a)(1)(B) to the specific facts of this dispute also does not persuade the Court that PNC Bank is a required party. The thrust of Defendants claim under this prong is that PNC Bank has an interest in the stock which is or may be superior to the lien held by Plaintiff because the enforceability of their security interest was relinquished once they made the Curtailment Payments. Contrary to this assertion, the UCC Filing Statements and UCC Filing Chains specify that Plaintiff perfected its lien on the stock months before PNC Bank, seemingly rebutting any claim that Enterprise does not hold a superior interest.[4] Defendants have already represented to the Bankruptcy Court in this district that they intended to surrender the stock to FNOB based on an undisputed lien held by that entity; their attempt to now argue that they satisfied their obligations such that the successor-in-interest cannot exercise its superior rights is highly questionable.

---

4. Record evidence also indicates that the Curtailment Payments did not disrupt the right of Plaintiff to enforce its lien on the stock under Paragraph 1.13 of the Loan Agreement. Defendants fail to acknowledge the critical distinction between the $2,500,000 given as the consideration for the Amendment and that sum as the ceiling for the collateral security in their 2009 State or Federal Income Tax refund. Nothing in the Amendment appears to fuse Defendants apparently separate obligations to pay the consideration and satisfy the Refund Payment requirement. Indeed, the Amendment explicitly states that "[t]he Note, as so amended, shall continue to be secured as reflect in the Loan Document, including without limitation by . . . (ii) that certain Security Agreement (Stock and Tax Refund) encumbering Borrower's interests in 2009 tax refunds and rights related to InEnTec, LLC as described therein ("Stock Interest").

Defendants also submit an alternative position under the second prong, claiming that they risk double liability and/or inconsistent obligations absent the joinder of PNC Bank. The Court finds this argument likewise unavailing. Article 9 of the Uniform Commercial Code as adopted in Pennsylvania, 13 PA. CONS. STAT. ANN. § 9101, *et seq.*, provides adequate avenues (*e.g.*, redeeming the collateral or bidding at its public sale) for PNC Bank to protect its junior lien, assuming it still holds any interest in the stock. Should PNC Bank hold the opinion that its interest is superior to that of Plaintiff, it merely needs to seek recovery from Enterprise Bank. Therefore, Defendants will not face duplicate liability or inconsistent obligations even under that unlikely scenario.

## **Conclusion**

Based on the foregoing, the Court concludes that PNC Bank is not a required party under Rule 19. Accordingly, the Court will deny Defendants' Motion to Dismiss under Rule 12(b)(7). An appropriate order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ENTERPRISE BANK & TRUST, | )<br>)<br>) |
| Plaintiff, | )<br>) 2:12-cv-1618 |
| v. | )<br>)<br>) |
| JEFFREY LIPTON and SHELLEY LIPTON, | )<br>)<br>) |
| Defendants. | )<br>) |

## ORDER OF COURT

AND NOW, this 31st day of January 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION TO DISMISS FOR FAILURE TO JOIN A REQUIRED PARTY UNDER RULE 19(A) (Doc. No. 3), filed by Defendants Jeffrey Lipton and Shelley Lipton, is **DENIED**. Defendants shall file an Answer to Plaintiff's Complaint on or before February 14, 2013.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **Beverly Weiss Manne, Esquire**
Email: bmanne@tuckerlaw.com

**Robert M. Barnes, Esquire**
Email: rbarnes@marcus-shapira.com